J-S19007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENNY R. SHIELDS, | |
| Appellant | No. 1382 EDA 2015 |

Appeal from the PCRA Order Entered April 17, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0508751-2006

BEFORE: BENDER, P.J.E., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED MARCH 16, 2016**

Appellant, Kenny R. Shields, appeals from the post conviction court's April 17, 2015 order denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant argues that the PCRA court erred by not granting him an evidentiary hearing before denying his claim of trial counsel's ineffectiveness. We affirm.

In January of 2008, Appellant was convicted of three counts of attempted murder, four counts of aggravated assault, one count of criminal conspiracy, one count of carrying a firearm without a license, and one count of possessing an instrument of crime. Appellant's convictions stemmed from his and three cohorts' shooting into Primos Sports Bar in Philadelphia, hitting two people inside. While fleeing, Appellant and the other men also shot at a woman standing outside her parked car, striking two children inside the

vehicle. All of the victims who were shot had serious, but non-fatal injuries. Appellant's fingerprints were found on one of the weapons used in the shooting, which had been discarded in close proximity to the sports bar.

On March 28, 2008, Appellant was sentenced to an aggregate term of 47 to 107 years' incarceration. He filed a timely appeal, and this Court affirmed Appellant's judgment of sentence on January 5, 2010, after which our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Shields*, 991 A.2d 361 (Pa. Super. 2010) (unpublished memorandum), *appeal denied*, 998 A.2d 960 (Pa. 2010).

Appellant filed a timely, *pro se* PCRA petition on July 21, 2011. Counsel was appointed and filed an amended petition on Appellant's behalf, asserting, *inter alia*, that trial counsel acted ineffectively by failing to properly cross-examine Clifford Parson, a fingerprint expert, "to educate the jury that a certain fingerprint did not have to be left on the weapon at any time proximate to the incident in question." Amended Petition, 9/14/12, at 2. On January 21, 2015, the court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing. Appellant filed a response to the Rule 907 notice, but on April 17, 2015, the court issued an order dismissing his petition as meritless.

Appellant filed a timely notice of appeal. The PCRA court did not order him to file a Pa.R.A.P. 1925(b) statement, but it did issue an opinion on August 14, 2015. Herein, Appellant raises one issue for our review: "Did the

PCRA [c]ourt err when it denied … [Appellant] PCRA relief[,] and all … without granting an [e]videntiary [h]earing?"  Appellant's Brief at 3.

In the argument portion of his brief, Appellant contends that the PCRA court erred by not granting him an evidentiary hearing on his claim that his trial counsel ineffectively failed to properly cross-examine Mr. Parson about whether he could determine the specific time that Appellant's fingerprint was placed on the shotgun found close to the scene of the shooting.  Appellant's Brief at 10.  According to Appellant, because counsel failed to cross-examine Mr. Parson on this issue, "the jury … [was] left with the presumption or assumption that the fingerprint was placed at a time proximate to the event…." *Id.*  He maintains that,

> [a] proper cross[-]examination of Mr. Parson would have revealed that he had absolutely no idea as to when that print could have been placed.  That would have permitted the jury to consider that in determining whether the fingerprint on the weapon carried much weight or little weight.  This was an extremely important issue in the case[,] as the weapon became identified to [Appellant].

*Id.* at 10-11.  Appellant concludes that this Court should remand this case to the PCRA court for an evidentiary hearing to determine if trial counsel "had some strategic reason for having failed to engage in the relevant and necessary cross-examination.  If counsel lacked such a reason, [Appellant] should be entitled to a new trial." *Id.* at 11.

Our standard of review regarding an order denying post-conviction relief under the PCRA is whether the determination of the court is supported by the evidence of record and is free of legal error.  ***Commonwealth v.***

- 3 -

***Ragan***, 923 A.2d 1169, 1170 (Pa. 2007). This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. ***Commonwealth v. Touw***, 781 A.2d 1250, 1252 (Pa. Super. 2001).

In regard to a PCRA court's decision not to conduct an evidentiary hearing, our Supreme Court has stated:

> The PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings." ***Commonwealth v. Paddy***, 609 Pa. 272, 15 A.3d 431, 442 (2011) (quoting Pa.R.Crim.P. 909(B)(2)). "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Id.*** (quoting ***Commonwealth v. D'Amato***, 579 Pa. 490, 856 A.2d 806, 820 (2004)).

***Commonwealth v. Roney***, 79 A.3d 595, 604-05 (Pa. 2013).

Our Supreme Court has also set forth the requirements for proving a claim of ineffective assistance of counsel, as follows:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [***Commonwealth v.***] ***Colavita***, 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing ***Strickland***[ ***v. Washington***, 104 S.Ct. 2053 (1984)]). In

- 4 -

Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali, supra**. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Colavita**, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. King**, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **Ali**, 608 Pa. at 86–87, 10 A.3d at 291 (quoting **Commonwealth v. Collins**, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing **Strickland**, 466 U.S. at 694, 104 S.Ct. 2052)).

**Commonwealth v. Spotz**, 84 A.3d 294, 311-12 (Pa. 2014).

Appellant contends that he is entitled to an evidentiary hearing because there is a 'genuine issue of material fact' concerning whether his trial counsel had a reasonable basis for not cross-examining Mr. Parson about when Appellant's fingerprint was left on the shotgun. However, the PCRA court concluded that Appellant failed to demonstrate that he was

prejudiced by counsel's conduct and, thus, his claim is meritless on that basis alone.

After careful review, we agree with the PCRA court that the verdict would not have changed, even had counsel questioned Mr. Parson about the timing of Appellant's fingerprints. To begin, the following evidence was presented at Appellant's trial:

On March 30, 2006, Officer Stephen Korpalski and his partner, Officer David Richardson, were on patrol when they received a call at 12:30 a.m. N.T., 1/16/08, at 88. The call indicated gunshots were heard around the 1500 block of Arrott Street. *Id.* After investigating the scene, the officers determined the assignment to be unfounded because no victims were discovered and witnesses did not report anything. *Id.*

Approximately one hour later, while still in the same vicinity, Officer Korpalski testified that he and Officer Richardson heard "a loud boom" and then a "continuous string of fire." *Id.* at 90. He stated that the "first boom sounded almost identical to a shotgun." *Id.* at 91.

Monique Bolden testified that her car was parked outside Primos Sports Bar at the intersection of Arrott and Griscom Streets when two males aimed weapons at her. N.T., 1/17/08, at 18. She stated that the first shooter was a tall-built black man and the second shooter was also black but shorter and skinnier than the first male. *Id.* at 23-24. She testified that both men turned their guns in her direction and started shooting. *Id.* at 28-29. She later identified Holloway as one of the shooters. *Id.* at 28.

Meanwhile, the officers noticed three men, Holloway, Sharpe, and Diaz, run to a van and get inside. N.T., 1/16/08, at 92. When Officer Korpalski activated his lights to stop the van, the vehicle reversed at a high rate of speed and then crashed into a utility pole. *Id.* Sharpe and Diaz proceeded to flee on foot while Holloway remained inside the van. *Id.* at 95.

Officer Richardson testified that he apprehended Holloway and searched the van. N.T., 1/17/08, at 105. Inside the

vehicle, he observed an AK-47 standing upright against the passenger rear seat. *Id.*

There were four victims in the shooting. Inside Primos' bar, Molina was shot in the leg, arm and chest. N.T., 1/16/08, 186-90. Alvarado, a bartender at Primos', was shot in her left thigh. N.T., 1/17/08, at 73. On the street, two of Bolden's children were injured. Ten-year-old Hykeem Bolden was shot in the back. *Id.* at 34. His seven-year-old brother, Kaseem, was shot in the face. *Id.* at 37.

Officer Robert Flade testified that he was assigned as an investigator to process the shooting scene from the intersection of Arrott and Griscom Streets to the juncture of Oxford and Griscom Streets. *Id.* at 151. The officer stated that he observed a shotgun in an alleyway right above 4728 Griscom Street. *Id.* at 160-61. He also recovered eighteen fired cartridge casings from the AK-47 as well as four fired shot shells and two live rounds from the shotgun. *Id.* at 167-69. Additionally, the officer observed three fingerprints found underneath the ejection port of the shotgun. *Id.* at 177-78. Officer Flade testified that the location of the prints indicated who had loaded the weapon and held the gun while firing. *Id.* at 186, 189.

After Officer Flade made four "lifts," or impressions, of the fingerprints from the shotgun, Cliff Parson analyzed them for identification purposes. N.T., 1/18/08, at 115-16. Parson testified that with respect to the second lift, he matched the prints with the middle, ring, and pinky fingers of Appellant's left hand. *Id.* at 124.

Furthermore, Officer Ernest Bottomer, a ballistics expert, testified that the gun recovered from the alleyway was a 20-gauge sawed-off shotgun. *Id.* at 161. He stated that the design of the four fired shells were comparable to those found on the ground. *Id.* at 166-67. He also testified that there were no inconsistencies between the fired shot [gun] shells and the live rounds. *Id.* at 170.

Additionally, the Commonwealth also introduced a statement made by Rasheeda DeShields, Appellant's sister, to police on March 31, 2006. N.T., 1/22/08, at 68-9. DeShields told police that on the night in question, Appellant was at her house around 11 p.m. when she received a phone call from Holloway. *Id.* at 74. Holloway asked to speak with Appellant

and said that he had just got shot and that he was "on his way to the house to get something." *Id.* When Appellant got on the phone, DeShields stated that she heard Holloway tell Appellant that he needed "the AK." *Id.* at 75. She said that Appellant told Holloway that he "would meet them out front." *Id.* DeShields stated that Appellant then went upstairs and she fell asleep. *Id.* at 75-6. The next time DeShields saw Appellant was the following morning. *Id.* at 76.

At trial, DeShields recanted her statements to police and testified that she did not see her brother on the night in question. *Id.* at 59. She also stated that she did not receive a phone call from Holloway. *Id.* at 60. Moreover, the witness testified that when the police came to her house on March 31, 2006, they threatened her with [a] gun and said that she was going to jail and her children would be taken away from her if she did not tell them where Appellant was. *Id.* at 61-4. Furthermore, DeShields stated that she did not remember signing the statement she made to police. *Id.* at 66.

To impeach DeShields' testimony, Detective Vincent Guarna testified that he interviewed the witness and took her statement on March 31, 2006. *Id.* at 154. The detective indicated that DeShields was cooperative, coherent, and answered the questions to the best of her ability. *Id.* Detective Guarna stated that he typed up the statement while DeShields answered the questions and then she signed it to verify [it] as her true statement. *Id.* at 163. He also testified that he did not promise her anything and did not threaten her. *Id.* at 166-67. Furthermore, the detective stated that DeShields never indicated to him that she had been threatened by police. *Id.* at 167.

Lastly, the parties stipulated that Diaz pled guilty to conspiracy to commit aggravated assault against Alvarado, Molina, Kaseem Bolden, and Hykeem Bolden. *Id.* at 146.

*Commonwealth v. Shields*, No. 1273 EDA 2008, unpublished memorandum at 5-9 (Pa. Super. filed January 5, 2010) (footnote omitted).

On direct appeal, this Court concluded that "[t]his evidence, and the reasonable inferences drawn therefrom, was sufficient to establish that Appellant was involved in the shooting." *Id.* at 9. We reasoned:

First, witnesses testified that they heard two types of guns being fired when the shooting took place. One was a continuous fire and the other was a loud boom. Second, Appellant's left-hand fingerprints were found on the shotgun used in the incident. Specifically, his prints were located under the ejection port, which is the area where a person loads the gun and holds it while firing. One could reasonably conclude that this location was not of common usage and thus, did not signify a great possibility of innocent contact by others. Additionally, we note that the shotgun was found in an alleyway close in proximity to the location of the crime scene and shortly after the shooting took place. The four fired shot shells and two live rounds that were discovered matched the shotgun. Moreover, the weapon was found in the opposite direction to where Appellant's codefendants were apprehended and the AK-47 was seized.

Additionally, the Commonwealth presented testimony regarding [a] potential motive for the shooting. Appellant's sister gave a statement to police that Holloway had called and said that he had been recently shot. DeShields heard Holloway tell Appellant that he needed a gun. Additionally, the witness told police that Appellant agreed to meet Holloway and others outside the house. Based on all this circumstantial evidence, one can reasonably infer that Appellant was the second shooter on March 30, 2006.

Moreover, we note that although DeShields may have recanted her prior statements to police and testified that events on March 30, 2006 did not take place and that the police threatened her, the jury was free to believe her earlier statements. For these reasons, Appellant's argument that the Commonwealth failed to prove the identification element of his convictions is without merit. Thus, Appellant's sufficiency argument fails.

*Id.* at 9-11 (citations omitted).

Viewing Appellant's ineffectiveness claim against the totality of the evidence, and our Court's prior determination that the evidence was sufficient to sustain his convictions, Appellant has failed to convince us that the jury would have reached a different result had Mr. Parson testified that

he could not determine precisely when Appellant's fingerprints were placed on the shotgun. Accordingly, Appellant has not demonstrated that he was prejudiced by trial counsel's failure to elicit this testimony from Mr. Parson during cross-examination. Because Appellant's claim fails to meet the prejudice prong of the ineffectiveness test, no legitimate purpose would be served by remanding for an evidentiary hearing regarding counsel's strategy for not cross-examining Mr. Parson in this regard.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2016